IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THERESA HAGANS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MADISON COUNTY STATE'S ATTORNEY'S ) <br> OFFICE, and ) <br> MADISON COUNTY GOVERNMENT, ) <br> ) <br> Defendants. ) <br> ) | No. 3:12-cv-01047-GPM-PMF <br><br> **PLAINTIFF DEMANDS** <br> **TRIAL BY JURY** |

## COMPLAINT

### COUNT I
### (ADA – Disability Discrimination)

COMES NOW the Plaintiff, THERESA HAGANS, by and through her attorney, Lee W. Barron, and for Count I of her Complaint against Defendants, Madison County State's Attorney's Office and Madison County, Illinois (a/k/a Madison County Government), states:

1. This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (as amended in 2008 by the ADAA) and the Illinois Human Rights Act.

2. Jurisdiction is properly invoked in this Court pursuant to 28 U.S.C. §1331 (Federal Question Jurisdiction) and § 745 ILCS 5/1.5:

    a. Plaintiff filed a timely charge of discrimination with the EEOC and the Illinois Human Rights Department asserting disability discrimination and retaliation claims; and

    b. Plaintiff received a Notice of Right to Sue from the Civil Rights Division of the United States Department of Justice, and derivatively from the EEOC, and plaintiff has filed this suit within 90 days of receipt of the appropriate Notice of Right to Sue.

3. Declaratory, injunctive, and equitable relief (including past and future lost wages), together with compensatory and liquidated damages, and all other authorized damages designed to make plaintiff whole, are sought. Plaintiff also seeks attorneys' fees, and expenses and costs consistent with the ADA, the ADAA and the Illinois Human Rights Act.

4. Venue is proper in this judicial district as the unlawful employment practices alleged were committed, inter alia, within this judicial district.

5. Plaintiff is a person with an impairment/disability as that term is used in the ADA and the ADAA and the Illinois Human Rights Act.

6. To the extent plaintiff, by virtue of her employment with the defendants, is arguably an employee of the State of Illinois, the State of Illinois has waived sovereign immunity in §745 ILCS 5/1.5 (c) and (d) and suit is permitted in state or federal court.

7. Plaintiff suffers from and has been diagnosed as suffering from a number of impairments, illnesses, medical conditions and disabilities.

8. Plaintiff suffers from and is substantially impaired in areas of major life functioning by the following, *inter alia*, impairments and disabling medical conditions: fibromyalgia, asthma, diabetes, high blood pressure, and sleep apnea.

9. The ailments and medical conditions experienced by plaintiff substantially interfere, *inter alia*, with plaintiff's ability to move about, walk, sleep, work, travel, and on occasion, concentrate.

10. Plaintiff was employed by defendants as an Assistant State's Attorney in Madison County from April 28, 1997 until July 1, 2011.

11. In and around August and September of 2010, and at other relevant times, plaintiff had discussions with defendants' representatives and managerial employees as regards plaintiff's medical conditions, illnesses, impairments, and disabilities.

12. In and around August and September of 2010, and at other times, plaintiff had discussions with defendants' representatives and managerial employees as regards plaintiff's need for accommodations and defendants providing plaintiff with potential accommodations for plaintiff's known impairments and disabilities.

13. Defendants' managerial representatives and administrators at all relevant times knew and agreed that plaintiff was a person with a disability, and in 2010 and early 2011 afforded plaintiff one or more reasonable accommodations so as to permit plaintiff to perform the essential functions of her job with defendants.

14. In the later part of 2010 and in 2011, plaintiff sought a reasonable accommodation in the nature of a modification of her work schedule and defendants granted plaintiff the reasonable accommodation of a modified work schedule, together with a concomitant pro rata reduction in compensation paid to plaintiff.

15. Plaintiff, in the late summer and early fall of 2010, asserted rights under the ADA and ADAA and the Illinois Human Rights Act; defendants were at all relevant times aware that plaintiff asserted rights pursuant to the ADA/ADAA and the Illinois Human Rights Act.

16. Defendants' illegal discrimination and retaliation occurred in Madison County, Illinois.

17. Defendants are employers as that term is used in the ADA, the ADAA, and the Illinois Human Rights Act.

18. Plaintiff's work performance at all relevant times met the reasonable expectations of her employers.

19. Defendants were aware in 2010 and 2011 that plaintiff enjoyed a very good to excellent reputation with Madison County judges and Madison County attorneys for the quality and quantity of her work.

20. The individual who served as Madison County State's Attorney in the late summer and early fall of 2010 became a judge in Madison County in December 2010.

21. A new Madison County State's Attorney, Thomas D. Gibbons, was appointed Madison County State's Attorney in December 2010.

22. On February 9, 2010, plaintiff met with an Assistant State's Attorney and an office administrator representing the defendants; during the meeting, plaintiff's needs for ongoing accommodations were discussed.

23. During the meeting on February 9, 2011, plaintiff discussed possible use of Family and Medical Leave Act leave.

24. During the meeting on February 9, 2011, plaintiff was discouraged by defendants' representatives from using or seeking FMLA leave.

25. On February 9, 2011, defendants agreed to continue to provide plaintiff with the accommodation of the modified work schedule previously provided to plaintiff.

26. At no time during the meeting that occurred on February 9, 2011 did any representative of defendants indicate or suggest that plaintiff was failing to meet the reasonable performance expectations of her job with defendants.

27. On June 29, 2011, plaintiff was instructed to attend a meeting with the State's Attorney, Thomas D. Gibbons, and a special investigator in the State's Attorney's office.

28. At the June 29, 2011 meeting, State's Attorney Gibbons stated to plaintiff words to the effect that "everyone likes you … but it's just not working out."

29. At all relevant times plaintiff enjoyed a good reputation with judges in Madison County and with attorneys who regularly worked with plaintiff, including but not limited to the attorneys who interacted with plaintiff as professional adversaries on pending legal matters.

30. At no time prior to notifying plaintiff on June 29, 2011 that plaintiff's employment with defendants was terminated did State's Attorney Gibbons inform plaintiff that he was dissatisfied with plaintiff's work performance.

31. At no time prior to notifying plaintiff on June 29, 2011 that plaintiff's employment with defendants was terminated did State's Attorney Gibbons directly meet with plaintiff and discuss directly with plaintiff, in any manner, plaintiff's work performance.

32. Madison County State's Attorney Gibbons further stated to plaintiff on June 29, 2011 that "your last day will be July 1."

33. State's Attorney Gibbons terminated plaintiff's employment on June 29, 2011 and made the termination effective July 1, 2011.

34. At the time defendants terminated plaintiff's employment, State's Attorney Gibbons acknowledged that plaintiff had sick days, personal days, and vacation days available to her.

35. At the time defendants terminated plaintiff's employment, plaintiff had rights available to her pursuant to the Family and Medical Leave Act (FMLA) and defendants were aware that plaintiff had rights available to her pursuant to the FMLA.

36. After defendants terminated plaintiff's employment, certain openings and job vacancies existed for attorneys with the defendants.

37. Plaintiff applied for certain openings and job vacancies with defendants in 2012.

38. Defendants refused to consider plaintiff for any of the job vacancies that existed with defendants, and instead hired and promoted individuals who did not have any disabilities or impairments but who had much less experience and training than plaintiff.

39. Plaintiff's disability and use of rights under the ADA, the ADAA and the Illinois Human Rights Act were motivating factors in defendants' decision to terminate plaintiff's employment.

40. Plaintiff's disability and use of rights under the ADA, the ADAA and the Illinois Human Rights Act were motivating factors in defendants' decision to refuse to consider plaintiff for employment with defendants for positions that were open and for which plaintiff was well qualified.

41. Plaintiff's disability was a motivating factor in defendants' decision to discharge plaintiff from her employment with defendants.

42. Plaintiff has lost wages, income, benefits and employment opportunities in excess of $400,000 as a direct and proximate result of defendants' illegal discrimination against plaintiff in violation of the ADA, the ADAA, and the Illinois Human Rights Act.

43. Plaintiff has incurred liability for attorneys' fees, costs and expenses in pursuing this matter, and pursuant to statute, is entitled to recovery of said fees, costs and expenses.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enjoin defendants from violating the ADA, the ADAA and the Illinois Human Rights Act;

B. Declare the acts of defendants to be illegal violation(s) of the ADA, the ADAA, and the Illinois Human Rights Act;

C. Award plaintiff lost wages and benefits, and other compensation, proximately caused by defendants' illegal conduct;

D. Award plaintiff compensatory damages in excess of $75,000.00;

E. Award plaintiff her reasonable costs, expenses, expert fees and attorneys' fees; and

F. Award such other and additional relief as this Court deems proper and just.

## COUNT II
### (FMLA)

COMES NOW the Plaintiff, THERESA HAGANS, by and through her attorney, Lee W. Barron, and for Count II of her Complaint against Defendants, Madison County State's Attorney's Office and Madison County, Illinois (a/k/a Madison County Government), states:

1. This action is brought pursuant to the Family and Medical Leave Act, 29 U.S.C.S. §2601 et seq.

2. Jurisdiction is properly invoked in this Court pursuant to 28 U.S.C. §1331 (Federal Question Jurisdiction) and §745 ILCS 5/1.5.

3. Declaratory, injunctive, and equitable relief (including past and future lost wages), together with compensatory and liquidated damages, and all other authorized damages designed to make plaintiff whole, are sought. Plaintiff also seeks attorneys' fees, and expenses and costs consistent with the Family and Medical Leave Act (FMLA).

4. Venue is proper in this judicial district as the unlawful employment practices alleged were committed, inter alia, within this judicial district.

5. Plaintiff is an eligible employee within the meaning of the FMLA.

6. Defendants interfered with plaintiff's FMLA rights, in that: plaintiff was eligible for the FMLA's protections; the defendants were employers covered by the FMLA; plaintiff was entitled to leave under the FMLA; plaintiff provided sufficient notice to defendants of her intent to use FMLA leave if necessary; and defendants terminated her employment in a manner that denied plaintiff her FMLA benefits to which she was otherwise entitled.

7. To the extent plaintiff, by virtue of her employment with the defendants, is arguably an employee of the State of Illinois, the State of Illinois has waived sovereign immunity in §745 ILCS 5/1.5 (c) and (d) and suit is permitted in state or federal court.

8. Plaintiff suffers from and has been diagnosed as suffering from a number of impairments, illnesses, and serious medical/health conditions.

9. In 2010 and 2011, Plaintiff informed defendants of plaintiff's serious health conditions including fibromyalgia, asthma, diabetes, high blood pressure, and sleep apnea.

10. Plaintiff was employed by defendants as an Assistant State's Attorney in Madison County from April 28, 1997 until July 1, 2011.

11. In and around August and September of 2010, and at other relevant times, plaintiff had discussions with defendants' representatives and managerial employees as regards plaintiff's serious medical and health conditions.

7

12. In and around August and September of 2010, and at other times, plaintiff had discussions with defendants' representatives and managerial employees as regards plaintiff's need for accommodations and defendants providing plaintiff with potential accommodations for plaintiff's known impairments and disabilities.

13. Defendants' managerial representatives and administrators at all relevant times knew and agreed that plaintiff was a person with a disability, and in 2010 and early 2011 afforded plaintiff one or more reasonable accommodations so that plaintiff could perform the essential functions of her job with defendants.

14. In the later part of 2010 and in 2011, plaintiff sought a reasonable accommodation in the nature of a modification of her work schedule, and defendants granted plaintiff the reasonable accommodation of a modified work schedule, together with a concomitant pro rata reduction in compensation paid to plaintiff.

15. Defendants are employers as that term is used in the FMLA.

16. Plaintiff's work performance at all relevant times met the reasonable expectations of her employers.

17. Defendants were aware in 2010 and 2011 that plaintiff enjoyed a very good to excellent reputation with Madison County judges and Madison County attorneys for the quality and quantity of her work.

18. On February 9, 2011, plaintiff met with an Assistant State's Attorney and an office administrator representing the defendants and plaintiff discussed possible use of Family and Medical Leave Act leave.

19. During the meeting on February 9, 2011, plaintiff was discouraged by defendants' representatives from using or seeking FMLA leave.

20. At no time during the meeting that occurred on February 9, 2011 did any representative of defendants indicate or suggest that plaintiff was failing to meet the reasonable performance expectations of her job with defendants.

21. On June 29, 2011, plaintiff was instructed to attend a meeting with the State's Attorney, Thomas D. Gibbons, and a special investigator in the State's Attorney's office.

22. At the June 29, 2011, meeting State's Attorney Gibbons stated to plaintiff that "everyone likes you … but it's just not working out."

23. At no time prior to notifying plaintiff on June 29, 2011 that plaintiff's employment with defendants was terminated did State's Attorney Gibbons inform plaintiff that he was dissatisfied with plaintiff's work performance.

24. At no time prior to notifying plaintiff on June 29, 2011 that plaintiff's employment with defendants was terminated did State's Attorney Gibbons directly meet with plaintiff and discuss directly with plaintiff in any manner plaintiff's work performance.

25. Madison County State's Attorney Gibbons further stated to plaintiff on June 29, 2011 that "your last day will be July 1."

26. State's Attorney Gibbons terminated plaintiff's employment on June 29, 2011 and made the termination effective July 1, 2011.

27. At the time defendants terminated plaintiff's employment, State's Attorney Gibbons acknowledged that plaintiff had sick days, personal days, and vacation days available to her.

28. At the time defendants terminated plaintiff's employment, defendants were aware and knew that plaintiff had attempted to assert rights available to her pursuant to the Family and Medical Leave Act (FMLA).

29. At the time defendants terminated plaintiff's employment, defendants were aware and knew that plaintiff was eligible for leave pursuant to the FMLA.

9

30. Plaintiff's request in February 2011 that she be able to use FMLA leave was and is an activity protected by the FMLA.

31. Defendants terminated plaintiff's employment which termination is a materially adverse employment action.

32. There is a causal connection between plaintiff's efforts to use the FMLA and the termination of her employment.

33. Plaintiff has lost wages, income, benefits and employment opportunities in excess of $400,000 as a direct and proximate result of defendants' illegal retaliation and interference with plaintiff's FMLA rights.

34. Plaintiff has incurred liability for attorneys' fees, costs and expenses in pursuing this matter, and pursuant to statute, is entitled to recovery of said fees, costs and expenses.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enjoin defendants from violating the FMLA;

B. Declare the acts of defendants to be illegal violation(s) of the FMLA;

C. Award plaintiff lost wages and benefits, and other compensation, proximately caused by defendant's illegal conduct;

D. Award plaintiff compensatory damages in excess of $75,000.00;

E. Award plaintiff her reasonable costs, expenses, expert fees and attorneys' fees; and

F. Award such other and additional relief as this Court deems proper and just.

PLAINTIFF, THERESA HAGANS

By:     */s/ Lee W. Barron*
Lee W. Barron (IL 06195132)
112 Front Street
Alton, IL 62002
Phone: 618-462-9160
Fax: 618-462-9167
lee@leebarronlaw.com

ATTORNEY FOR PLAINTIFF